

# In the Missouri Court of Appeals
## Western District

IN THE ESTATE OF SHIRLEY J.        )
MERRIOTT, Deceased,               )
CITIZENS-FARMERS BANK OF COLE     )
CAMP,                             )
                      Appellant,  )
v.                                )        WD76938
                                  )
THOMAS SIDNEY MERRIOTT,           )        FILED: August 19, 2014
TIMOTHY SCOTT MERRIOTT and        )
TAMRA SUE MERRIOTT WILSON,        )
                     Respondents. )

## APPEAL FROM THE CIRCUIT COURT OF MORGAN COUNTY
### THE HONORABLE KEVIN P. SCHEHR, JUDGE

### BEFORE DIVISION ONE: MARK D. PFEIFFER, PRESIDING JUDGE,
### LISA WHITE HARDWICK AND KAREN KING MITCHELL, JUDGES

Citizens-Farmers Bank of Cole Camp ("Appellant") appeals from the probate court's judgment in an action for accounting pursuant to Section 461.300, RSMo Cum. Supp. 2013,[1] against Thomas Merriott, Timothy Merriott, and Tamra Merriott Wilson (collectively, "Respondents"), who are the children and heirs of Shirley Merriott ("Merriott"). Appellant had filed the action for accounting to allow Merriott's estate to recover the value of all nonprobate transfers that Merriott had made to Respondents in order to discharge Appellant's unpaid claim against the estate.

---

[1] All statutory references are to the Revised Statutes of Missouri 2000, as updated by the 2013 Cumulative Supplement.

On appeal, Appellant contends the probate court misapplied the law regarding the proper remedy for an accounting action under Section 461.300 when it ordered Respondents to sell Merriott's residence and give Appellant any sales proceeds remaining after the mortgage was paid.  Appellant further contends the court erred in valuing the residence at the time of trial instead of at the time it was transferred to Respondents and in assigning a value to the residence that was not supported by substantial evidence.  Because (1) the proper remedy under Section 461.300 was a money judgment in favor of Merriott's estate and against Respondents for the value of the recoverable transfers to the extent necessary to discharge Appellant's claim against the estate; and (2) the court should have determined the value of Merriott's residence at the time of her death instead of at the time of trial, we reverse and remand this case to the probate court for further proceedings.

## FACTUAL AND PROCEDURAL HISTORY

Merriott died on March 5, 2008.  Shortly after Merriott's death, the personal representative of her estate filed an "Affidavit to Establish Title of Distributees of Decedent Where Total Estate is Less Than $40,000."  The affidavit listed real and personal property valued at $16,497.59, and Respondents were named as the distributees of the property.  The probate court executed the certificate of clerk portion of the affidavit, which indicated that each of the Respondents was to receive an undivided one-third interest in the estate property.

In March 2009, Appellant filed a claim against Merriott's estate for $370,479.38, which it alleged was the unpaid balance plus accrued interest on loans that Merriott and

2

her husband[2] had obtained from Appellant. These loans included one unsecured promissory note and several promissory notes secured by rental properties owned by Merriott and her husband. Contemporaneously, Appellant also filed a petition to require administration of the estate. In its petition, Appellant alleged that, as a creditor, it was a person interested in the estate. Appellant further alleged that substantial assets passed to Respondents and that those assets were subject to its claim under the provisions of Section 461.300. This statute provides that recipients of nonprobate and other transfers outside of the administration of a decedent's estate are liable to account for the value of such transfers to the extent necessary to discharge statutory allowances and claims that remain unpaid after application of the decedent's estate. § 461.300.1. The probate court sustained Appellant's petition to require administration of Merriott's estate and appointed Thomas Merriott as personal representative.

In July 2009, Appellant filed a demand for the personal representative of Merriott's estate to bring an action under Section 461.300 against the recipients of transfers of her property. In the demand, Appellant alleged that substantial assets had been transferred to Respondents under Missouri's nonprobate laws and that the transfers were subject to an action for accounting under Section 461.300.[3] Appellant asked that the personal representative commence such an action.

---

[2] Merriott's husband predeceased her.

[3] As discussed *infra*, an "action for accounting" under Section 461.300.2 is a procedure by which qualified claimants can recover the value of nonprobate and other recoverable transfers to satisfy unpaid claims. It is not the same as an "action for an accounting," in which a party seeks "detailed financial and transactional information from various fiduciaries." Robert J. Selsor, *Fattening Up the Skinny Estate -- The Non-Probate Transfer Statute's Remedies for Pursuing a Decedent's Assets*, 67 J. Mo. B. 286, 288 (Sept.-Oct. 2011).

3

In August 2009, Appellant foreclosed on the rental properties that secured Merriott's loans. After the foreclosure sales, the total amount of the deficiencies on the notes was $159,827.20.

After Thomas Merriott, as personal representative of the estate, failed to file an action for accounting under Section 461.300, Appellant filed such an action. Appellant alleged that Respondents had received Merriott's personal property, her three bank accounts via a transfer on death designation, and her residence and rental property via beneficiary deeds. Appellant asked that the court enter judgment requiring each of the Respondents to deliver "all assets or a sufficient portion thereof on a pro rata basis to the extent determined by the Court to be necessary to discharge" Appellant's claim against Merriott's estate.

The probate court removed Thomas Merriott as personal representative of the estate and appointed the Morgan County Public Administrator to serve as personal representative. In October 2011, the court held a hearing. Following the hearing, the court ordered Respondents to make an accounting[4] to the personal representative "as to all property received by them through non-probate transfers."

In February 2012, Appellant filed a motion for judgment on its petition for accounting under Section 461.300. In the motion, Appellant alleged that Respondents had a total of $60,762.99 in nonprobate assets, which consisted of the remaining proceeds from the sale of real and personal property after expenses were paid, funds from Merriott's Edward Jones account and three bank accounts, and $34,000 in equity

---

[4] When the court ordered Respondents to make an "accounting" of all nonprobate transfers to them, it was not granting Appellant relief on its "action for accounting" under Section 461.300. Instead, it was ordering Respondents to file detailed financial and transactional information concerning the nonprobate transfers they received.

4

on Merriott's residence. Appellant requested that the court enter a money judgment in favor of Merriott's estate and against Respondents for the entire $60,762.99 to discharge Appellant's claim against the estate.

In April 2012, Respondents filed their accounting, or detailed financial and transactional information, regarding the nonprobate transfers. Respondents asserted that they had received income and assets totaling $32,365.05 and expenses totaling $22,267.91. They stated that, after deducting the expenses from the income and assets, they used the remaining funds to pay off the loan on Merriott's residence. Respondents further stated that the estate was "void of cash" and that they had incurred a new mortgage on Merriott's residence to a third-party bank in the amount of approximately $50,000. Appellant filed a response, in which it disputed the amount of Respondents' claimed income, assets, and expenses.

The probate court held a hearing on Appellant's motion for a judgment on its petition for accounting. Following the hearing, the court entered its judgment finding that Appellant had an unpaid claim of $164,279.10 plus interest from September 17, 2010, against Merriott's estate and that the estate was insufficient to pay Appellant's claim and the expenses of administration. The court further found that Respondents had received personal property, three bank accounts through transfer on death designations, rental homes that were transferred to them through beneficiary deeds and later sold by them, Merriott's residence that was transferred through a beneficiary deed, and assets transferred under the "Affidavit to Establish Title of Distributees of Shirley J. Merriott."

The court stated that Appellant was requesting that it be awarded the sum of $53,154 from Respondents based upon the value of these transfers. The evidence at trial showed that the requested amount included, among other things, $30,000 in equity from Merriott's residence, which Appellant had valued at $80,000 and which was subject to a mortgage of approximately $47,000. The court rejected the asserted $80,000 value and found that the value of Merriott's residence was only $50,000. The court subtracted the asserted $30,000 in equity from the $53,154 that Appellant was trying to recover. The court concluded that Appellant was entitled to recover only $23,154.

The court stated that the "equitable remedy" to satisfy this amount was to order Respondents to list Merriott's residence for sale for not less than $50,000. The court ordered that, once the property was sold, Respondents were to distribute the sale proceeds first to the third-party bank to pay off its approximate $47,000 mortgage, and then to Appellant to satisfy its claim under Section 461.300. Appellant appeals.

## STANDARD OF REVIEW

We will affirm the probate court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law. *In re Estate of Hayden*, 258 S.W.3d 505, 508 (Mo. App. 2008) (citing *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976)). Two of Appellant's three points concern the interpretation of Section 461.300. The interpretation of a statute is a question of law, which we review *de novo. Id.*

## ANALYSIS

In Point I, Appellant contends the probate court misapplied the law regarding the proper remedy under Section 461.300 when it ordered Respondents to sell Merriott's

6

residence and give Appellant any sales proceeds remaining after the mortgage to the third-party bank was paid. Appellant asserts that Section 461.300 provides for the recovery of the value of the property received in the nonprobate transfers and for the personal representative to administer the recovered sums as part of the decedent's estate. We agree.

The use of various nonprobate transfers can result in a probate estate having insufficient assets to pay allowed claims against the estate. In Section 461.300, the legislature provides a mechanism for recovering the value of such nonprobate transfers under certain circumstances to satisfy some or all of these claims. Section 461.300.1 provides, in pertinent part:

> Each recipient of a recoverable transfer of a decedent's property shall be liable to account for a pro rata share of the value of all such property received, to the extent necessary to discharge the statutory allowances to the decedent's surviving spouse and dependent children, and claims remaining unpaid after application of the decedent's estate, including expenses of administration and costs as provided in subsection 3 of this section . . . . No proceeding may be brought under this section when the deficiency described in this subsection is solely attributable to costs and expenses of administration.

A "recoverable transfer" is defined, in pertinent part, as "a nonprobate transfer of a decedent's property under sections 461.003 to 461.081 and any other transfer of a decedent's property other than from the administration of the decedent's probate estate that was subject to satisfaction of the decedent's debts immediately prior to the decedent's death[.]" § 461.300.10(4).

The purpose of Section 461.300 has been described as follows:

> In summary, this statute allows a person entitled to certain statutory allowances and, more often, creditors, to reach out and recover the value of assets formerly owned by a decedent but that have not been made a part of the probate estate. Certain recoverable transfers, most notably

7

transfers to a trust, beneficiary deed conveyances or jointly held property, can be pulled back into probate and then used to pay these obligations. . . . This remedy is distinct from a discovery of assets action that would seek to retitle assets outside of a probate estate that allegedly should be part of the estate ab initio.

Robert J. Selsor, *Fattening Up the Skinny Estate -- The Non-Probate Transfer Statute's Remedies for Pursuing a Decedent's Assets*, 67 J. Mo. B. 286, 286 (Sept.-Oct. 2011).

Section 461.300 does not specifically state the form of the recovery allowed. A review of the provisions of Section 461.300 indicates, however, that a judgment entered pursuant to the statute should be in the form of a money judgment in favor of the decedent's probate estate. Looking first at subsection 1 of the statute, we note that it states: "Each recipient of a recoverable transfer of a decedent's property shall be *liable* to account for a pro rata share of the *value* of all such property received[.]" § 461.300.1 (emphasis added). This provision requires recipients of recoverable transfers to account for the *value* of the property received, not the actual property. Second, subsection 2 of the statute states: "*Sums* recovered in an action for accounting under this section *shall be administered by the personal representative* as part of the decedent's estate." § 461.300.2 (emphasis added). This provision references the recovery and administration of *sums*, not property. Both subsections 1 and 2 indicate that the legislature intended to allow the recovery, in favor of the estate, of the *value* of the property received through nonprobate and other recoverable transfers. Recovery of the *value* of property received would be through a money judgment.

This interpretation of Section 461.300 is supported by subsection 6 of the statute, which states: "This section does not create a lien on any property that is the subject of a recoverable transfer, except as a lien may be perfected by the way of attachment,

garnishment, or judgment in an accounting proceeding authorized by this section." §

461.300.6. Section 461.300 does not create a lien because it does not directly affect

the ownership of the property involved in the recoverable transfers. Instead, the statute

makes the recipients of the recoverable transfers liable for the value they received when

the estate does not have sufficient assets to discharge statutory allowances and unpaid

claims.

Case law also supports this interpretation. As we noted in *Cook v. Barnard*, 100

S.W.3d 924, 927 (Mo. App. 2003), Section 461.300 provides "a rule of liability, not of

ownership. It allows the estate to recover the *value* of non-probate assets, among other

things, when the estate's assets (the probate assets) are inadequate to cover its debts."

We discussed the concept further in *In re Estate of Jones*, 280 S.W.3d 647, 655 (Mo.

App. 2009). In *Jones*, the recipients of a nonprobate transfer appealed a judgment for

accounting allowing the estate to recover a money judgment for as much of the value of

the transfer needed to satisfy the State's claim for reimbursement of the decedent's

Medicaid benefits. *Id.* at 649-50. In rejecting the recipients' claim that the State's

attempt to recover under Section 461.300 expanded the definition of "estate" by

bringing the transferred asset into the estate, this court explained:

> A proceeding under section 461.300 is not an action to bring nonprobate
> assets into the probate estate, because the substance of section 461.300
> "is a rule of liability, not of ownership." *Cook v. Barnard*, 100 S.W.3d 924,
> 927 (Mo. App. 2003). Instead, a proceeding under section 461.300 allows
> the decedent's estate to recover the value of nonprobate assets when the
> assets already in the estate are insufficient to cover the claims of the
> decedent's creditors. *Id.* . . . *[T]he judgment recovered in a section
> 461.300 action for accounting is a monetary judgment for the value of the
> nonprobate asset, which becomes part of the decedent's estate as defined
> by section 472.010(11). This monetary judgment is then distributed by the
> personal representative, just as all other assets in the estate are
> distributed.*

9

*Id.* at 655 (emphasis added).

The confusion regarding the proper remedy under Section 461.300 arises because the statute describes the suit as an "action for accounting" and does not explicitly state the form of recovery intended. As one commentator explained:

> Section 461.300.2 allows for a cause of action known as an "action for accounting." This is confusing because an action for an accounting is also a well-known action seeking detailed financial and transactional information from various fiduciaries. But they are obviously not the same. *This action for accounting seeks recovery of a money judgment.*

Selsor, *supra*, 67 J. Mo. B. at 288 (emphasis added).[5]

In this case, the court's judgment indicates that it found the value of the recoverable transfers to Respondents to be $23,154,[6] and that Appellant was entitled to this amount because of its unpaid claim of $164,279.10 against Merriott's estate. Instead of awarding the estate a money judgment for $23,154 to discharge Appellant's claim, however, the court ordered Respondents to sell Merriott's residence for at least $50,000, pay off the approximately $47,000 mortgage to the third-party bank, and give Appellant any remaining sale proceeds. This was error. The court should have entered a money judgment in favor of Merriott's estate and against Respondents in the amount of the value of the recoverable transfers, to the extent necessary to discharge Appellant's unpaid claim against the estate. Point I is granted.

---

[5] We recognize that the court in *Hayden*, 258 S.W.3d at 507, affirmed the probate court's holding that the decedent's estate could recover certain real estate under Section 461.300 for the purposes of satisfying creditors' claims against the estate. The issues on appeal in that case, however, did not concern the form of recovery but instead the right of recovery. *Id.* Consequently, the court neither addressed nor decided whether recovery of the actual property, as opposed to a money judgment for the value of the transfer, was the appropriate remedy under Section 461.300.

[6] We address whether this value is correct in our discussion of Point II, *infra*.

10

In Point II, Appellant contends the probate court erred in valuing Merriott's residence. In its judgment, the court found that Merriott's residence was transferred to Respondents by beneficiary deed. Hence, it was a "recoverable transfer" under Section 461.300.10(4). With regard its value, the probate court found that, after Merriott's death, "the real estate market suffered a down turn in value and the value of real estate received by [Respondents] sustained a decline in value through no fault of [Appellant] or [Respondents]." Therefore, the court rejected the Appellant's asserted value of $80,000 for the residence and assigned it a value of $50,000.

Appellant argues that the court erred in valuing the residence as of the date of trial rather than the date of its transfer to Respondents, which was Merriott's death on March 5, 2008. Section 461.300 does not explicitly state the time for valuing recoverable transfers. Nevertheless, because Section 461.300.1 provides that recipients of recoverable transfers are "liable to account for a pro rata share of the value of all such property *received*," (emphasis added), the implication is that the value of the property is determined at the time it is transferred to the recipients, which is the date of the decedent's death.

One commentator explained why practical reasons support such an interpretation:

> Valuation of a transfer would seem to be straightforward if the transfer involves liquid funds. But a transfer involving a volatile asset may raise other issues, including the time for fixing the value of the asset and, of course, disputes over its value. For example, stock and land values can change dramatically during a recession and the value at the owner's death may vary greatly from the value six months before death or on the day of a later accounting action trial. Arguably, value should be determined at the time of the transfer -- the date of death -- since § 461.300 is primarily focused on that event. The only temporal reference in the statutory definition of a "recoverable transfer" is to the time

11

"immediately prior to the decedent's death."  It follows that focusing on the value of a transferred asset at that instant for purposes of gauging the value for a money judgment against a transferee is the only logical answer to this question.

Selsor, *supra*, 67 J. Mo. B. at 290 (footnote omitted).

Indeed, there are two provisions in Section 461.300 that reference the time "immediately prior to the decedent's death."  As noted, the definition of "recoverable transfer" includes "any other transfer of a decedent's property other than from the administration of the decedent's probate estate that was subject to satisfaction of the decedent's debts *immediately prior to the decedent's death*."  § 461.300.10(4) (emphasis added).  Additionally, Section 461.300.8 refers to the same time period:

> The recipient of any property held in trust that was subject to the satisfaction of the decedent's debts *immediately prior to the decedent's death*, and the recipient of any property held in joint tenancy with right of survivorship that was subject to the satisfaction of the decedent's debts *immediately prior to the decedent's death*, are subject to this section, but only to the extent of the decedent's contribution to the value of the property.

(Emphasis added.)  Because these provisions indicate that the focus of Section 461.300 is on property that could have been used to satisfy the decedent's debts "immediately prior to the decedent's death," the time for valuing such property should be the date of the decedent's death.[7]

The circumstances of this case demonstrate why the value of recoverable transfers should be determined at the time the property is transferred to the recipients.

---

[7] If these assets had been included in the probate estate, they would have been valued as of the date of the decedent's death.  Several sections of the Probate Code explicitly provide that the relevant time for valuing estate assets is the date of the decedent's death.  See, e.g., §§ 473.017.1(4), 473.233.2, 473.793, 473.797, 473.800, and 474.163.4.  When interpreting statutes, "'it is appropriate to take into consideration statutes involving similar or related subject matter when such statutes shed light upon the meaning of the statute being construed, even though the statutes are found in different chapters and were enacted at different times.'"  *Jones*, 280 S.W.3d at 654 (quoting *Lane v. Lensmeyer*, 158 S.W.3d 218, 266 (Mo. banc 2005) (internal quotations omitted)).

12

There was evidence at trial that the fair market value of the property as of Merriott's death on March 5, 2008, was $80,000. Trial did not begin until October 2011, and was not concluded until August 2013. As the court noted in its judgment, between the date of Merriott's death and the time of trial, "the real estate market suffered a down turn in value and the value of real estate received by [Respondents] sustained a decline in value." If Merriott's residence had been included in the estate, the estate would have had the opportunity to sell the property, possibly before it declined in value. Similarly, other types of property, such as vehicles, naturally depreciate over time, and any delay in valuing could create a windfall for the recipients. Other property might suffer damage or destruction during a delay.

It is also possible that some assets, such as real estate or securities, could increase in value, either as a result of market forces or the recipients' efforts, during the delay between the decedent's death and trial. Consequently, the date that the property is transferred to the recipients, which is the date of the decedent's death, provides a clear and fair date for determining the value of the recoverable transfers. Recipients of such transfers would be entitled to any gain that occurs after the transfer but would also be responsible for any loss that occurs.

The probate court erred in valuing Merriott's residence as of the date of trial. Therefore, we reverse the probate court's judgment and remand the case for the court to determine the value of the residence as of the date of Merriott's death. Because the probate court has determined that the transfer of the residence to Respondents was a recoverable transfer under Section 461.300 and Respondents have not appealed that determination, the court must further determine the equity in the property as of the date

13

of Merriott's death and include such amount in a money judgment in favor of Merriott's estate, to the extent necessary to discharge Appellant's unpaid claim against the estate. Point II is granted.[8]

---

[8] Because we have found that the court erroneously valued the residence at the time of trial and are remanding the case for the court to determine the residence's value at the time of decedent's death, we need not address Appellant's claim in Point III that the value the court assigned to the residence was not supported by substantial evidence.

**CONCLUSION**

We reverse the probate court's judgment and remand the case for further proceedings consistent with this opinion.

_____
LISA WHITE HARDWICK, JUDGE

ALL CONCUR.